Our next case for argument this morning is United States v. Moser. Mr. Kramer. May it please the court, my client Jason Moser is seeking a new trial based on the due process violations and the violation of the federal recusal statute concerning the ex parte communications of Judge Colin Bruce at the trial level. I'm aware that the court has delved into this issue now on a few occasions. Seemingly I have brought up the rear of all of the cases that have been presented. Counsel's aware of the different distinctions that the court has made. I would simply point out that obviously this case was a jury trial. The court has made the distinction in Atwood and Williams and or the difference between judge being the trier of fact versus the jury. I would simply point out your honor that in this instance, I think that underestimates the role of a judge as the conductor of a trial. While he obviously did not make the final decision of guilt versus innocence. He did control the case and make decisions throughout the case that would have impacted the case that was presented to the jury. The United States government has conceded that Judge Bruce should have by all rights recused himself. But they said that the error in and of itself was harmless. While I dispute the idea that any judge who sits and presides over a trial who should have recused himself that that error is harmless. I would point out that there were decisions made during the case that impacted the evidence that was presented to the jury. Specifically the evidence presented by the government's expert witness. Let me see if we can be more precise. Are you contending that the matter covered in this email had any bearing on the outcome of the case? Your honor, I feel like the words that were in this email are subject to more of an interpretation than the government would like it to. I think it's a symbol of the relationship between Judge Bruce and specifically Assistant U.S. Attorney Ms. Pearson. It's a, for lack of a better word, it's emblematic of the relationship between the two that almost seems to be something along the lines of a teammate to another saying, hey, I believe you're doing well, let's get this thing done. That thing being a conviction of Mr. Mosher. But we've already decided that, right? We've already looked at the emails. The Judicial Council already decided that issue and said that these emails were not indicative of prejudice against defendants or in favor of the government one way or the other. So there's really nothing for us to deal with on that issue. And what Judge Easterbrook suggested, I'm also having a very hard time with that in this email. I get the sense of, at least from the district court opinion and the district court email, I don't know what this email could have had to do with any of the decisions that Judge Bruce made during the trial. Were there decisions where he, for instance, can you say he cut large areas of evidence or wouldn't allow the defendants to present multiple witnesses because he was interested in getting the trial done in a timely fashion or having his hand on the scale to obtain a conviction? Where you could then say, when he said let's get this thing done, meaning let's get a conviction, and he actually demonstrated that by his rulings during the trial. If I'm understanding the question correctly, my thinking is that yes, there are some decisions that mold that evidence. I don't know that, there's no evidence that any witness was specifically excluded from the trial. You know, I'm looking for an example where, yes, here's an example. We were in the middle of cross-examining a witness and the judge said, you know, you've taken too long with this witness, cross-examination is over. It's over. We're going to move, government, call your next witness. There is one example of the appellant's expert witness, his testimony was limited into the scope of his expertise. But that's a big problem for you because that wasn't appealed the first time around, right? I mean, that wasn't raised on appeal, so that's... No, sir, you're correct. It was not, and I obviously was not the one who prepared the first appeal. Right. The second issue... And I'm not, by the way, I'm not criticizing the lawyers for not raising that issue on appeal, just so you know. No, I understand. The other issue to me that was symbolic was him bolstering the testimony of the U.S. government's expert witness, Dr. Leventhal, by allowing him to make expert opinions and diagnoses on a patient that he never actually met. But that happens all the time. That happens all the time. By the way, in criminal cases, sometimes the defendant won't meet with the government's expert, right? And that just goes to the weight of the evidence. If you can cross-examine all day long and have the doctor or the jury sit here and tell the jury how you could form these opinions without actually talking to my client, that's a very good line of cross-examination, but that goes to the weight of the evidence, not its admissibility. And while I would agree, I do think, though, that it's rare for the expert to be able to make that opinion after spending all of his prior testimony criticizing the foundation of the evaluation that he then uses to make his diagnosis. Well, I think that may be a very good argument for the jury. Right. But to answer your question, those are the specific examples that I can think of off the top of my head where I felt like there was some molding of the testimony or directing of the testimony in a way that I felt like favored the prosecution. I understand that those are issues that were not raised on the first appeal, but obviously we did not become aware of the communications until not only after the trial, but after actually the first resentencing. And then I received a letter from the U.S. Attorney's Office making me aware of the communications. But I also think that looking at just that one email puts this situation in a vacuum that doesn't actually give a full perspective of the relationship between Judge Bruce and the U.S. Attorney's Office. I mean, there are affidavits that were prepared by his paralegal talking about someone who never felt like he actually left the management of the office. And this is well after he's assumed the bench. There are countless emails talking about him going to lunch on almost a weekly basis with all of the different U.S. Attorneys. So it is your argument that we have to reverse the conviction in every case Judge Bruce tried for, say, his first five years on the bench? That's quite distinct from one ex parte email. Your Honor, I think if there was a concerted effort made to make sure that the public had confidence in that court, then yes. No one ever does that. Assistant United States Attorneys are promoted to district judge now and again. One is on this panel. There's a U.S. Attorney who became a judge of the Court of Appeals. I came out of the Solicitor General's office. No one makes distinct efforts to try to persuade the bench and bar that the new judges are neutral. Right. That's not the condition of someone becoming a judge during cases. And while I understand, Your Honor, that that is the norm, I don't think it is the norm that we see the types of emails that were in question here. While I would admit that the great majority of them are rather innocuous and they're playing and they're maybe about a birthday party or they're about going to another party. There are several where he was commenting directly on the performance of attorneys during trial. I think you just have to. You need to take it as established by this court's cases that the general course of dealing between Judge Bruce and the U.S. Attorney's office is not a ground to set aside all of his criminal judgments. You need to focus on what happened in this case. In this case, Your Honor, I feel like the relationship between Judge Bruce and Judge Pearson, as evidenced by the email that is in question that was concerning our case, which is separate from Williams, is symbolic of the relationship that he still maintained and symbolic of the impact he still has with that office. I understand that it is not as pervasive as the emails in the Nixon case or the emails in the Orr case. To me, however, it's still akin to going into a trial knowing that instead of it being myself versus the U.S. government, it's now myself versus the United States government and a judge who still considers himself and the employees of that U.S. government's office still considers him part of the management of that office. Your Honor, I see that I'm into my rebuttal time. If I could, I'd like to reserve the rest of my time for rebuttal. Certainly, Mr. Kramer. Thank you. Mr. Goldman. Good morning, Your Honors. It may have pleased the Court. Ross Goldman for the United States. I'll first, obviously, address the new trial claims. There are, and I'll address first the due process claim and second, the Section 455 claim. On the due process claim, as this Court explained in Williams, a defendant, to make out a due process violation in this context, a defendant has to show either actual bias or evidence of bias. Or facts so suggesting bias that bias should be presumed. And to show this kind of presumed bias, this Court again made clear in Williams, the defendant has to show that the judge had a pecuniary interest in the outcome, that the judge worked on the case as a prosecutor, or that the judge had become so personally embroiled with the litigants. As Judge Shadid correctly concluded, this case does not fit any of those buckets. There is no actual bias in this case. And there are two, as we understand Mr. Mosher's arguments, there are two sort of subparts to it. One is his reliance on Judge Bruce's ex parte communications about other cases. In our view, this Court's decision in Williams directly forecloses that argument. The defendant in Williams made precisely that claim, and this Court rejected it. That leaves the ex parte communication in this case, the February 1st, 2016 email from Judge Bruce to Assistant United States Attorney Pearson. And again, Judge Shadid had this exactly right. Although the ex parte nature of that email was improper, the substance of it was not. And in this respect, it is relevant, I think several points are relevant. One, the special committee report surveyed all of the ex parte emails in this case, including the ex parte email in this case, and still concluded that none of the emails, including this one, showed that the communications caused Judge Bruce to advantage one party or the other. In adopting the special committee report, the Judicial Council of this Court similarly found no evidence of bias. The findings of the Judicial Council are not binding in particular litigation. I'm sure you understand that. Of course. The best argument for Moser, I think, is the tagline in the email, let's get this thing done. The question is, what is this thing? The trial? Then there's no problem. The conviction? Then there's a serious problem. So my question is, why shouldn't we read this, the more serious reading, the one more favorable to the defendant? Of course, a couple of responses, Your Honor. First is to answer the first, or respond to the first part of Your Honor's point. We're not suggesting the special committee report is binding. We are suggesting that Williams is binding on this court. And Williams did hold that there was no actual bias, and in support of that holding, relied on the special committee findings. So that's part one of my answer, Your Honor. The second part, in terms of – and so I think that answers the question about how should you read the last line of that email. Because, to be sure, if this court, if that email were best read to say, let's go get a conviction, let's get a conviction done, we would not be here as the United States. We would have conceded error. That would have been an actual bias that would have amounted to a due process violation. So, but putting aside – Well, Mr. Goldman, that's your reading. I mean, I'm glad to hear it. But we don't put it aside because that's the government's reading of the sentence. No, no. Of course, Your Honor. My point is only that Williams already decided that this email cannot possibly mean let's go get a conviction done. Because Williams sort of endorsed the special committee's finding that there was no actual bias. And if that email were best read to mean let's go get a conviction, that would be actual bias. I want to go back to Judge Rugsbo. Are you trying to incorporate the judicial counsel finding through Williams to this case? I thought you just conceded that that's not binding on us. The special committee report is not binding. Williams is as a published decision of this court. No question. And Williams held that there was no evidence of actual bias, that none of the email communications showed actual bias. So if – You're not suggesting we have a frivolous case before us, do we? No, not at all, Your Honor. We take this case extremely seriously. And I think Judge Shadid took this case extremely seriously. But let me move to the merits of the email itself then, just putting aside the special committee and Williams. When you move to the merits, can you address the fact why the email was not forwarded to defense counsel? That bothers me a little bit because the lawyer who received the email forwarded it to her trial counsel. And maybe it's not in the record, but didn't forward it to defense counsel. And certainly we've got a defendant sitting in the penitentiary who feels, you know, like folks are ganging up on him here. It's just a weird thing that a government lawyer wouldn't forward this to defense counsel and just say FYI. So beyond the fact that it was not immediately forwarded and that it was forwarded in late September 2018, the record does not provide further information about that. And I, standing here today, don't feel confident making representations about that. Judge Plum, to your point about the merits of the email and how it's best read, and I do think it's important here. Judge Shadid was obviously taking these issues very seriously, and he did not adopt the most egregious reading of this email. And I think that's correct, and here's why. The email has to be read in context. And the context is it starts in November 2015, which is where the parties are at what is supposed to be the final pretrial conference, and the government moves for a continuance. And at pages 16 and 17 of the transcript of that conference, Judge Bruce expresses some pretty obvious frustration with the United States. And Judge Shadid notes this in his new trial decision. Nevertheless, Judge Bruce grants the continuance, and now you fast forward to February of 2016, which is now the final pretrial conference before the next conference, and there's some confusion or ambiguity in the record about – or not ambiguity in the record. There's some confusion about whether the United States had filed certain of the requisite documents on time. And it was immediately following that hearing, about 20 minutes after the end of the hearing, that Assistant United States Attorney Pearson sent the email to Judge Bruce, copying defense counsel and others, saying, Your Honor, here are the documents. We filed them back in November. I apologize for any confusion. It was in response to that email, of course, that Judge Bruce says, my bad, let's get this thing done. And I think in context, the thing to be getting done here is the trial and not the conviction. Again, putting this – and so that's why I think there's no evidence of actual bias here. Looking now to the Section 455 analysis, you know, this case, in all material respects, is much more similar to Williams than it is to Atwood and to Orr. And I think that's the – and Judge Shadid, again, carefully analyzed all three of these decisions and came to the same conclusion. So if you consider the first factor, the risk of injustice to the parties, unlike Atwood and like Orr, this was a jury trial where this court in Williams made clear that judges have much less ability to dictate the outcome as compared to sentencing, which is a key distinguishing factor between this case in Williams on the one hand and Atwood on the other. There's also much less risk of injustice to the defendant here than there was in Orr because, again, in Orr, what really drove the analysis on this first factor was that Judge Bruce had made two very close call significant evidentiary rulings both in favor of the government and that were challenged on appeal. In this case, by contrast, and similar to Williams, we don't have any of that. Mr. Mosher, the only evidentiary claim he raises on appeal is a very narrow claim about whether Dr. Leventhal should have been allowed to offer diagnostic testimony without having himself evaluated Mr. Mosher. As we outline in our brief, that claim is, we think, very obviously foreclosed both by Rule 703, by Daubert, by this court's decisions in cases like Lawson, and he does not identify a single other evidentiary decision that Judge Bruce made that was the type of close discretionary call that was at issue at Orr. And we know that it matters that it be a close discretionary call because Orr also made clear that the denial of the motion to suppress in that case was so obviously properly denied that it played no role in this court's analysis of the first factor. Turning to the cost to the United States, again, like Williams, the cost to the United States is significant because retrying a case, especially if this is a five-day trial with an extremely complicated child exploitation enterprise statute, the costs of retrying that case are much greater than certainly a resentencing that was at issue in Atwood, or even in Orr, which was a two-day trial on the much simpler felon in possession charge. And so we think Judge Shadid had the sort of balance of things exactly right. And similarly, with respect to the third factor, risk of undermining fairness of the judicial, public's perception of the judicial proceedings. Again, like Williams, absent a showing of bias or real concern that bias infected the trial below, it would actually undermine faith in the judicial process to grant relief in this kind of circumstance. That's precisely the determination that Williams made. It's exactly what Judge Shadid held with respect to prong three. And then with respect to the second prong, which is, you know, the need to sort of deter future violations. You know, we acknowledge Atwood sort of suggested that that factor favors the defendant because a need to deter. Williams and Orr both said that this factor favors the United States, largely because of all of the measures that have been undertaken in this case, the public reprimand of Judge Bruce. Judge Bruce having changed his his habits, his computer systems to make sure that that ex parte communications like this don't happen anymore. He had to undertake training. He was removed from cases involving the Central District of Illinois for a period of time. And Williams and Orr drew the inference that that was sufficient to make sure to sort of achieve the deterrence kind of objective that we think the middle, the second prong of the Liljebrug factors is driving at. And in the balance of things, Judge Shadid, who is obviously, I think, carefully looking at these issues. He's the one who reassigned these cases from Judge Bruce. Judge Shadid is the one who granted relief to Nixon and her new trial motion. Carefully looked at this, balanced these factors and concluded that in the totality of the circumstances in this case, that the 455A violation was harmless. We think that determination is correct. Mr. Goldman, I think you're making a very accurate reflection of our prior cases. Thank you. We have a case here where there was a discovery dispute. And it was worked out and we have the my bad comment. You know, the judge is satisfied. And then we have, obviously, the critical tagline of let's get it done. Now, put yourself in the position of the defense lawyer who is copied on this. Copied. Do you think that lawyer might want to move for the judge to recuse himself? Honestly, Your Honor, I don't know. I understand. But I do. I'm not trying to avoid your question. I do want to address it on its terms. What I would what I would suggest, I think, Your Honor, is the email would have been understood in its proper context. To reflect, again, the get this thing done in the context of Judge Bruce expressed in previous frustration about the trial having been moved. And in that November hearing, it wasn't just frustration about the trial being moved. But Judge Bruce talks more generally about, you know, putting together his calendar and his schedule and moving one trial creates problems for other trials. That that's how I think that email would be best understood. It's also the case that this court has already spoken to this email and has already considered what this email means. And, for example, in Williams, this court simply looked at this email and said Judge Bruce reassured former colleagues after they made filing mistakes. In one instance, he stated, my bad, you're doing fine. Let's get this thing done. Again, reflecting no concern that this email, the let's get this thing done, was an effort to was a communication about let's get a conviction done. And going back to what I said before, if that were the reading of this email that this court adopted in Williams, I think the due process analysis in Williams would have come out the other way. Because this goes back to what I was trying to say, Your Honor, before. Certainly, a judge who says ex parte to a prosecutor, let's go get a conviction together, would be a showing of actual bias that would rise to a due process bias. So this, in your view, just speaks to haste when he says let's get it done. He's reflecting his desire to get the calendar moved. Is that what you're saying? I think what he's reflecting is his desire to get the trial started and finished. And no more continuances, no more discovery issues, everything tied up ready to go for trial. But I do want to make clear, also, there's nothing in this trial record that would back up the egregious reading of that email. We catalog this in our brief, but Judge Bruce made a number of pretrial and trial rulings related to the admissibility of evidence, voir dire questions, Rule 29 decisions. And the government won some of them, and Mr. Mosher won some of them. And again, Mr. Mosher does not attribute error to any of those issues, again, except the Dr. Leventhal issue. Certainly doesn't claim that they reflect any amount of bias. And we have a footnote in our brief, page 20, note 6, that talks about, you know, as much as Judge Bruce was, you know, this email suggests he wants to get the case done. He was in no way pushing the parties to hurry up with their case. He was very, you know, sort of generous in understanding about how much time the parties needed. He went out of his way to make clear that he wasn't rushing defense counsel to finish an examination of a witness, for example. He complimented defense counsel in front of the jury and said, you know, at one point, the defendant's expert was testifying and went on a bit too long with the narrative. And Judge Bruce said, this is in front of the jury, you know, you have a good lawyer, he'll ask what needs to be asked. I just don't think that there's any single circumstance in this entire case that would warrant a reading of the let's get this thing done that it means anything other than the trial done. I see my time has expired. If the court has no further questions, we would ask the court to affirm. Thank you, counsel. Thank you. Anything further, Mr. Kramer? Your Honor, I would simply point out the email in question, as the panel has asked, why would you give it the more sinister reading? And I think that there is a little bit more to the context that was omitted. This email started as a chain of emails that involved defense counsel. I was privy to the first couple of links in the chain. However, after the error by the government, I was then omitted from the follow-up of the chain. But so was everybody else. It's not as if the judge copied only the government lawyers. It's clear what he did is press reply instead of reply to all, right? It only replied to the sender. He didn't copy the other government lawyers that were on the email chain. No, but he didn't have any kind of prior relationship with any of the other government lawyers. The other government lawyer that was involved was from Washington, D.C. Ms. Pearson was the only one that he had a standing relationship with. And I think that's important. Is there anything that you can point to that is in the trial record to support a reading that the let's get this thing done could be read in favor of a conviction? You pointed to the issue of the expert witnesses. There's nothing, at least, is there anything in the pretrial record? Is there any judge's demeanor during the trial? Is there anything that you can point to that would support a reading, that reading of the last line of the email? Not other than what we've already discussed. I would simply say, Your Honor, though, as the panel pointed out, had I received that email or had I been part of that chain, that is something, and Judge Schott had questioned counsel on that, would you have sought a recusal based on that? And I assured him and I would assure this panel that I certainly would have sought a recusal based on that. I think that is, this email, I think, is indicative of why there are provisions put in place that, you know, when a prosecutor at any level steps up to the bench, that there is some separation or there's some time and provisions and steps put in to put a buffer between them and that office. In this instance, though, it doesn't seem like that buffer ever happened. What weight do we give to Judge Shadid's conclusion that this email gets an innocent rather than a guilty interpretation? Your Honor, I will simply say I was very appreciative at the time and even now. You're not dealing with my question. What weight? Is that a finding of fact that we have to respect unless clearly erroneous? Or is it something else? I think that Judge Shadid, at the time that he made his decision, it was still an evolving situation that he might not yet have been fully involved. You're just not dealing with my question, counsel. Is it a finding of fact? By the standards that have been set forth, yes, I would agree with you that it is a finding of fact. You're not agreeing with anything. I asked a question. But you think it is a finding of fact that that's how we should treat it? Yes, sir. Okay. I appreciate the panel's time this morning. We would simply ask that the Court reverse the conviction. Thank you. Thank you very much, Mr. Kramer. And we appreciate your willingness to accept the appointment in this case and your assistance to the Court as well as your client. The case is taken under advisement.